Our last case today, number 231589, Cangrejeros de Santurce Baseball Club, LLC, et al. versus Liga de Beisbol Profesional de Puerto Rico, Inc., et al. Will counsel for appellant please come up and introduce yourself on the record to begin? Good morning, Your Honor. This is Jeffrey Kessler from Winston and Stroud on behalf of the appellants. With the court's permission, I'd like to reserve three minutes for rebuttal. You may. Thank you. Your Honor, there are actually three separate issues in this case, each of which could be important. One is the federal baseball exemption. The second is the Commerce Clause argument as to whether it preempts the Puerto Rico laws, whether or not the federal baseball exemption applies. And the third one is the race judicata argument, which independently has to be decided by this Supreme Court because it is the only basis for precluding our 1983 civil rights claims. I'm going to try to get to each one. If I can, I don't know. We'll see if we can do that. I'm going to start with federal baseball. One thing is clear about federal baseball. The Supreme Court has now made clear in four different decisions, in Radovich and Schubert and Toulson and Floyd, actually five, counting Alston, that that exemption should be limited to its facts. It should not be expanded to new leagues or situations. Where did it say it shouldn't be expanded to new leagues? Okay. Well, actually, in the Alston case, which I actually had the privilege of arguing to the Supreme Court, the specific language is, do not extend it to new leagues. The word league is actually in Alston. They were considering, they are actually extending it to college sports, including college baseball, for example, and it was said, no, that exemption would not be extended. But the word leagues is right there. And so the issue before this court, very simple, either the district court was correct when he invoked Star Trek and said he's boldly going somewhere where no court has gone before. In addition to the league point, so that's, it's not Major League Baseball, therefore you can't extend it.  Okay. Setting that one aside for the moment, a separate contention is what is the business of baseball? Correct. Okay. Could you just address that? Yes. So the case, I think, gets this right, is the Eastern District of Pennsylvania and Piazza. And I would recommend that decision. Piazza says, what were the issues in all these Supreme Court cases under Starling Decisive? But Piazza has a piece of it which is about the reserve clause. And if we put aside the reserve clause, it then goes on to do a further analysis. So if one thought that it's not a fair reading of the exemption to say that the reserve clause is all that they're talking about, where do you then fall on the spectrum? We've got cases that say the sign in Wrigley, that's part of the business of baseball. Hiring baseball scouts, that's part of the business of baseball. Charlie Philly wants to own a club, that's not part of the business of baseball. Broadcast rights, that's not part of the business of baseball. Where are you in this spectrum? I'm not in the business of baseball. And the standard I think that is correct is the summary that the Department of Justice advocated for in the Nostalgia Partners amicus brief, which is it has to do with the central operations of baseball in putting the game on the field. So it includes things like player rules. It includes things like the rules of the game. It includes things that go to those core functions that are necessary. One piece of the alleged conspiracy relates to player salary, correct? Indirectly, yes. How does that bear? Because I understand other pieces are the city-owned stadium, which you'd say that's different. The broadcast rights, that's different. But player salaries is trickier for you, I imagine, right? No, I don't think so, Your Honor. I'll tell you why. The rules of the league regarding player competition are not what we're challenging here. Those rules allow the teams to compete for players, to offer them more money, to be able to do all that. If we were challenging that... Well, what do we make of the... Isn't there one of the league constitutional provisions would be detrimental to the league? And they say there was a gentleman's agreement about how one proceeded. And how are we supposed to... I understand that's not formal law and a formal rule, but how do we evaluate that for purposes of the exemption? Because it's not in the rules of the league. In fact, it's contrary to the rules of the league. It shows it was an extra private antitrust conspiracy among the teams, although it also had an aspect of the mayor of San Juan. It's a separate part. But it was a private conspiracy, very much like what was at issue in Piazza. In Piazza, the idea was that the owners didn't want this particular person to be able to buy the team and then possibly move it to another location. And that was said to be outside of these core central operations. Didn't Piazza go on to say maybe there needs to be fact-finding about precisely what the nature of the ownership would be? Because in some instances, excluding an owner, though it's about ownership, since you're excluding an owner rather than keeping someone from becoming an owner, the risk is that that starts to trench on. The reason you want to exclude him is because of how they're operating with respect to the business of baseball itself and the game being put on the field. What about that? So that's a possible outcome here is that you would rule that there are issues of fact that need to be resolved before determining whether or not the exemption applies. And are we just on that score procedurally? Where are we with respect to whether we'd be in that posture? So we're on a 12b-1 or 12b-6, or what are we on? You're on a 12b-6. So for 12b-6 purposes, it would be unconventional to say there needs to be further factual development. Well, no, but there are two ways you could approach this. One is that you could say that there is no basis as a matter of law to apply the baseball exemption based on the allegations of the complaint. In other words, therefore, it cannot be properly dismissed on that basis. But you could say it is possible that with further factual development in the case that this defense could be raised again. Okay, and so on to that point, with respect to the player salary component of it, which seems to me the thing that is closest to the kind of thing like given the scouts case and the like trenches on it, how are we to evaluate whether as a matter of law those allegations get in the way? And when I ask it, what are we to do with the fact that I understand that the motion to dismiss that you're facing that was granted didn't seem to calibrate allegation by allegation or type of allegation by type of allegation. What's the significance of that for the purpose of what we're supposed to do on this appeal? Yeah, the problem is that the motion to dismiss didn't even mention that allegation or raise that point in support of its motion to dismiss nor have they raised it on appeal, right? So technically it's not even an argument that's before your honor. So I think... And did the district court rely on it? No, your district court did not. The district court simply said the way he interpreted the Supreme Court decisions is that anything covering baseball in any way would be covered and that in fact he did not accept that the other district courts like Piazza, he didn't think that was the right reading. He thought that any possible thing involving baseball was covered so it didn't matter, so there was no focus to it. So as far as you read it, broadcast rights, he would treat as being within the exemption, at least the logic the district court used. The broadcast rights? Yes. Broadcast rights, we have a case in point that says it's not part of the business. But I'm saying as you're reading the district court logic here though, you would say the district court was rejecting the rationale of that other case and making it much broader. Absolutely, he would reject the rationale. Or gave no indication as to what the bounds of it would be. He would apply it to concessionaires. He would apply it to the ownership exclusion. He would apply it to all of those things because he was boldly going where no one had gone before in my view. I don't think any district court cases, even the cases that he cited involving the spectators and the Cubs didn't go as far as the district court went here in terms of viewing the exemption as every possible aspect. That case spoke about the fact as to why it was related to the core product of the field. And just to understand the limits of your own argument to us, you're not taking issue with either Wyckoff or the Wrigley Field case. That's correct. That's correct. I think I'm on the right side. I think this has to do with the ownership issue. And this, by the way, I want to get to this. It's important for Ray Strudicata. The Ray Strudicata decision is flatly wrong. The district court thought the issue was the suspension in our 1983 case which is what was the subject of the Superior Court action. That was not the issue. The issue with our 1983 case is the seizure of the franchise without due process of law with the mayor of San Juan which didn't happen until after the Superior Court action took place. It's not even plausible. It couldn't possibly have been raised in that action. It didn't exist at that time. Two other points going back to the business of baseball. I don't know if Thompson can help you with further questions. Two further points. One, what is the significance of the relationship of the mayor to this conspiracy for purposes of the business of baseball? Delimiting whether this falls within that or not. And I ask that in reference when you answer it to account for I take it the mayor is not a defendant? Yes. So what is the significance of the allegation of a conspiracy naming the mayor in a case in which the mayor is then not named as a defendant? So he's not a defendant because under the antitrust case law you don't have to name all co-conspirators. That's very well established by the Supreme Court. So he's a named co-conspirator but not a defendant. It has significance because accepting our allegations as true it takes it to motivations involving the municipality and the government that have nothing to do with the business of baseball. Again, that's why I was saying I don't think the player allegation part of this is one tiny part of the overall conspiracy that's been alleged because it has to do with them competing for broadcasting, for sponsors, for conspiring with the mayor to protect this. This is not the type of... So that gets me to my second question. Actually, I lied. There's a third question. The second question is do we have any case law about when there is an alleged antitrust violation that has components, some of which plainly fall outside the business of baseball and some of which, just for purposes of asking the question, let's say, do fall within the business. So in like immunity law, the presidential immunity case, this issue comes up all the time. There's lots of it's not relevant. Some of it is relevant. But if even a little bit is relevant, sometimes that means there's immunity all the way. Do we have any case law how to think about the exemptions application when we're mixed like that? So what I would say is that the decision in Twin Cities Sports Service in the Ninth Circuit that involved concession services where they held that it was not within the business of baseball, arguably you could look at those facts and say there was some aspects that related to the game, but it was basically a commercial item involving the concessionaires as to what was being done. And they said even though it's at the baseball game, that's outside the business of baseball in terms of that. So again, I think with our allegations here, that this conspiracy has nothing to do with their rules. This is really important. We're not challenging their rules. We're not challenging the core things that were at issue in any of those Supreme Court cases, one or the other. Those were all challenges to the rules, the basic decision-making of the central operations of baseball. If it gets expanded here, then we are not following the Supreme Court's mandate for judicial exception when even a statutory exemption to the antitrust laws should be narrowly construed. And then the last thing is for me, if I understand it, the alleged conspiracy was undertaken in response to actions that were being contemplated or might be taken, but it's not as if any actual expenditures had been made by the owners. What is the significance of that for purposes of trying to figure out... So there were some allegations of things that happened. For example, one of the things he did, and this involved the mayor, he publicly announced that he was going to make his own investment in a stadium, and if San Juan didn't support it, he would consider moving the team to another city in Puerto Rico, and that was one of the key things that motivated them. Another one is in the complaint... His own investment, and he owned the stadium or not? No, the city owned it, which is why the city didn't want to make its part of the investment, which is part of what happened. So that was just an announcement of an intention to make an investment. That's right, but he announced he was going to do it, and he announced he was considering a move at a press conference. I take it he had no legal authority to... He'd have no legal authority to make the investment without the city's approval, or is that wrong? Well, that's why he said he would move the team if the city wasn't going to do it, exactly. The second part was, he had entered into an agreement. It's in the complaint for broadcasting games in the United States for sponsorships, had offered higher salaries to some of the players, things that together had caused this consternation. All those allegations are in the complaint as things he was already doing. He had made offers of higher salaries. That's correct. At least in our allegations, which for purposes of 12v6 have to be accepted as true. Let me make a couple of questions also. Your position, obviously, that the baseball exception only applies if it's major league or it's minor league affiliates, correct? Yes. Now, isn't there, with the Puerto Rico league, which had a relationship with major league for many years, at least if you go back to the founding of this league in 1967, but isn't there a symbiotic relationship? Because I know for a fact, and I think everybody who knows about the Puerto Rico league, for years, major league players have come to Puerto Rico, usually in the winter time, maybe they're injured or they're just rookies or they want to improve. They come here a couple of weeks and practice by playing with the teams. Just to give you some examples, Reggie Jackson played here, Mike Schmidt, Carl Ripken Jr., Wade Boggs, Roberto Clemente also played, and even before 1967, Willie Mays, Hank Aaron. So it's a long-standing relationship. Isn't that symbiotic relationship with major league? Wouldn't that move it towards major league baseball? No, Your Honor, this is in the record. The agreement is the winter league agreement, which the court below reviewed and actually agreed that did not make any connection or affiliation. What the winter league agreement is is with something called the Caribbean league. The Caribbean league is the one that has the relationship with the Puerto Rico league and Dominican Republic. I think there's a league in Venezuela that has a variety of different leagues. That's where the top teams from every jurisdiction play, like Puerto Rico, Cuba, Venezuela, whatever. Yes, and they have a winter league agreement which is an independent contract, if you will. They have an agreement with major league baseball. Here are the circumstances under which players from major league baseball can play in these winter league games. So in your view, Judge Young's finding that Puerto Rico professional baseball ventures, and he puts it in caps, not associated with major league baseball, that's the correct finding? That is the correct finding. That finding, by the way, is not challenged. On the appeal, I'd also note this is just like the case saying you don't apply it to broadcasting agreements, even though the broadcasters clearly have agreements with major league baseball. The concessionaires clearly have agreements with major league baseball. The umpire case, in other words, the mere fact that you have agreements with major league baseball doesn't bring you within the ambit only because these are starry, decisive rulings that should be limited to their facts, and there are no Supreme Court cases applying the exemption to anything where it was an agreement with a third party. Even if several, every year, several major league baseball players play here, they play for the World Classic, that still doesn't change your answer. It does not change my answer at all, Your Honor. Okay, thank you. Just so opposing counsel knows, I'd like to hear this same question to you, so I won't make it twice. Okay, thank you. The only question, I just need a little bit more clarification on a question that Judge Barron, Chief Judge Barron presented. Are you saying that some of the allegations do contain allegations that go to the business of baseball and some don't, or are you saying that the way your pleadings are framed, all of the allegations are outside of the business of baseball? We believe all of our allegations are outside the business of baseball the way we define it, because we're not challenging any rule of the league, we're not challenging any policy of the league, we're not challenging any of the things that regulate their central operations, we're challenging a conspiracy between the team owners and the Mayor of San Juan that actually, we think, violated their league rules and how they were supposed to do this, so it's sort of the opposite of challenging what we think is within the business of baseball. For pleading purposes, if the, and I think this is, you don't even contest this, there is a league constitutional rule that you can't do anything to the detriment of the league or something like that, correct? It's a kind of detrimental type clause, yes. And you're not challenging that that is a rule? Correct. And they, what are we to do with the apparent, are you alleging they're not in taking the action you allege to be the illegal conspiratorial conduct, that they are not claiming that they are, in doing that, enforcing that clause? Well, again, accepting our allegations are true, that's not what we alleged, it's not what they did. But just so I understand, you're alleging that they did something independent of any contention, is there anything in the record addressing, I mean, at some point he must have been informed that he was going to lose the team, right? No, so here's what happened. The conduct detrimental piece, something like that was invoked to do the suspension, originally. And that's not challenged in this case. After the suspension, we're alleging there was then a conspiracy between the team owners, the mayor of San Juan, to get a vote, which they voted, not conduct detrimental, to simply take away his franchise and sell it to Impulse Sports. And that was not under the conduct detrimental clause, nothing to do with it. And I guess what I just want to precise, do the allegations specifically allege that that vote was not taken pursuant to the conduct detrimental clause? Well, the way it does it is by, it says why it was done, pursuant to a conspiracy to restrain trade. But you see, that's what I'm a little bit concerned about. I just want to understand, since we're on pleading, Iqbal, etc. Just pleading it's done as part of a antitrust conspiracy doesn't, that's the legal conclusion. The question is, is it done pursuant to an actionable antitrust conspiracy or not? That depends on whether it was done not pursuant to any rule, by your own account. And I guess what I'm asking is, in the complaint, will I find the allegation that that vote, unlike the suspension, was not done pursuant to the legal rule about conduct detrimental? You will find allegations that it was not done pursuant to any legal rule, it was a private conspiracy. I don't know that we specifically mentioned that rule. But you say it was not done pursuant to any rule. That is correct. That it was an extra league agreement that we're challenging that has nothing to do with any legal rule. And then last thing, if one were to think that given that it was a vote of the league members, that it would be fair to infer it was done pursuant to some rule, and then in light of the suspension, it would be fair to infer that it was done pursuant to their conception of the conduct detrimental. Just, I understand you don't agree with that. Maybe I don't agree with that. But I want to know for purposes of your test about what makes it within the business of baseball, which has to do with  what do you make of a league that has a rule that's simply nothing detrimental to the league? So, let me say it two ways. One is the conduct detrimental rule would not authorize the seizure of the team by its terms. It's not a remedy. And it's decided by the commissioner not a vote of the things. It's a completely different process. It's if you know Major League Baseball, it's when they suspended George Steinbrenner for that. They couldn't take away the Yankees from that. Right? So this is totally outside of that. But second, what I think you're articulating are possible factual defenses to whether or not this was an anti-competitive conspiracy. I understand that. But I'm also asking what is your assessment if we're going to write something that says this test about the rules being important? I'm a little concerned that is then imagining some kind of platonic set of rules that sound like baseball rules. But if the league then just has for itself a rule that says here's the rule. Don't do anything we don't like. Anything that would hurt the league. Is that enough to then make it? So I assume not. So it can't be that we just look at is there a rule. There's got to be some substantive thing about what constitutes the kind of rule that's a baseball rule. I 100% agree with that. How am I supposed to do that? So again, nostalgic partners. The central operations of putting the product of baseball on the field. If it's a rule doing that, then it's okay. If you had a rule that said for example says we want to fix the ticket prices between our teams in the market having nothing to do with the operations of the game. In fact, that it's a rule might not give any antitrust immunity. Just to play it out. A rule, no aluminum bats, you'd say that's right central to the business of baseball. That is correct. That would go to the business of baseball. Unless you take the Piazza view that it should be even more narrowly limited to the facts because obviously there was no discussion in Supreme Court about equipment or things like that. Any further questions? It sounds like what you were saying is that just taking the pleadings as given, the way you've played it is fine and to the extent that this clause has any relevance, maybe it comes up during discovery and it gets knocked out on summary judgment if it's deemed to have any merit. But as far as the pleadings are concerned, you're in good shape. That's correct, Your Honor. We have pled a conspiracy that is not within the business of baseball and therefore not covered by the exemption. I don't want to make our job harder but I just want to make sure before you sit down that if we did it that way, that is giving you the relief you're seeking because if we were to adopt your major league's view, there would be no possibility of factual development because the league is not going to become any more of a major league baseball league. So I obviously prefer to win on the major league view because it makes everything easier and cleaner but I'll win on any ground that Your Honor is willing to let me win on, right? But yes, the major league rule was made unnecessary. Yes, but I take it that means we can't avoid that issue because that's broader relief. I think you have to consider that issue so it is sort of a hierarchy. I got it. And it's the same way you don't have to reach the Commerce Clause issue if you reverse on the exemption but if you agree the exemption applied, then you have to go to the Commerce Clause issue which we don't see how could possibly apply because there's no need for uniform regulation of this. It just doesn't fit within the current flood analysis. So in other words, just to get it clear, if or even if the exception applies to Puerto Rico league, we still have to determine whether what you allege is outside of the exception. So we have to go to that prong regardless of, you know. That is correct. If you win on prong two, regardless of prong one, we need not decide. Right. If you win on prong one, that it doesn't apply at all to the league, then you don't have to go to Business and Baseball. But if you decline on the first one, then you have to reach the Business and Baseball. And we can't skip the first and just go to the second. That is correct. Got it. Thank you. Thank you very much. Thank you, counsel. Will attorney for Appalese please come up and introduce yourself on the record to begin. May it please the court. Good morning, your honors. My name is Francisco Colón Ramirez and I represent the Liga Profesional de Baseball de Puerto Rico. We call it Liga or I might call it League. Your honor, first of all, I must take exception to the continued reliance on Piazza.  the only court that has followed Piazza is a Florida Supreme Court decision. Every circuit courts, both before and after Piazza have rejected the arguments that were put forth in Piazza. That's the reserve clause point. Yes. But what about the second half of it where it then starts to be taking a more expansive view about ownership and assessing gee, on the facts. Am I getting my cases mixed up? That's Piazza too, right? No, your honor. That was, as the judge very well warned at the very end, he was basing his interpretation based on the facts as alleged in the complaint. And therein, the allegation was that the market was team ownership. In this case, however, plaintiffs have alleged a market and we're gonna so if we look at the joint appendix 36 in the complaint, it says that it's not team ownership as it was in Piazza. Here, the market is investment and operation it's the investment and operations market. Investment and operations market, not just ownership. And related markets for players. That's the market at issue here. So if we were gonna use the court's analysis in Piazza at the end where he ties it in the judge ties it into the allegations in the complaint, in that case these are different. Now, separately Some of that doesn't relate to players, correct? Some of it doesn't. So what's the significance? Because if I understand what Judge Young did and how you've argued it to us it's a kind of all or nothing all of it's in, you don't try and separate out, well this is in this is not in, so wouldn't that just suggest that there may be legal error in dismissing? No, your honors. If we go to what happened there was the when we talk about the taking of his team or whatever, what happened was that the operating agreement was deemed canceled. It terminated. That's what it was. And although he did answer, counsel answered that Axon was not put on notice about what was going to happen, your honor the complaint specifically alleges in paragraph 67 that he was put on notice and thereafter then the league took the action. And that's the action that they're challenging. Yes, but what I wanted to mention was the reason for doing that was because of the provisions of the operation agreement and the rules set forth therein they're saying, the appellant is saying that they're not challenging the rules. Well the rules prohibit the franchise operator, Cangrejeros LLC do not mix it with the Cangrejeros baseball team or franchise. The rules provide that Cangrejeros LLC cannot file a judicial action to try to contest a league determination. It has to follow the in-house procedures for review. Just so we're we're on 12b6 and as they're suggesting post 12b6 factual development has come up to show what was actually going on that may or may not bear on the exception. Are you saying that by their own allegations they're alleging what you're just describing? They allege I'll go to paragraph 67 and on May 7 2022, this is joint appendix 32 Flores informed plaintiffs that the league was seizing the investor operator interest of Cangrejeros LLC LLC in the franchise pursuant to section 306 of the constitution based on actions filing of his claim in the Puerto Rico Supreme Court in response to the sanctions the league imposed on him. Well actually the plaintiffs was not only Axon Axon could have filed suit on his own when he challenged the sanction that was assessed on him, the $5,000 sanction for some reason Cangrejeros... That paragraph 67, that's not the suspension, that's the actual or is that the suspension? No, this is the termination of the franchise operator agreement. That's in paragraph 67 Now before, in going to I do want to point out that there has been an artful shift from the allegations to the briefing in terms of what the conspiracy was. They're now saying that this has nothing to do with the termination of the sorry, with the sanction that was imposed that this is about the seizure. However in the complaint we see in joint appendix 30 starting at 30 when you look at paragraph 58 and you start reading down through paragraph 64 there starts a narrative about a conspiracy that was born when Axon mentioned that he wanted to move or he expressed he had the option of moving the franchise to Umacao and they're not fighting the rules but the operation agreement said it had to be in San Juan. Now and that's how the conspiracy is alleged in the complaint and it continues with how then he was sanctioned, he was levied a $5,000 sanction on a two year suspension as part of that conspiracy. So while in the briefing and today they're claiming that the conspiracy has nothing to do with what happened the temporary suspension the complaint and plaintiffs are the master of their pleadings. That's what they allege in the complaint. They tie it all together and that is a conspiracy that did not that conspiracy beginning prior to the $5,000 fine, that is a conspiracy that did not exist because the $5,000 fine was challenged in local court and the local court upheld the validity of the league's actions and dismissed the complaint. Again when the motion to dismiss was filed under Rule 15, they could have amended their pleadings as a matter of right, they chose not to so they have to live by the allegations in the complaint, not how they're trying to spin the conspiracy now. I'm not following the significance of that but that's not the entirety of the allegation what you just described. No, it's they're claiming here that the conspiracy that they're challenging was the conspiracy to remove the franchise operation from Cangrejeros. And you're saying that is not what they're challenging in their complaint? No, in the complaint, the conspiracy that is alleged is a conspiracy that starts before they were even sanctioned the $5,000. But it includes the termination and the seizing? Yes. So let's put aside this point. With respect to the seizing that you say is just the vote that was taken to terminate the operators agreement? There was a notification of him of the intent and then there was an approval, a ratification by the directors of the league to proceed. And that's in their complaint they allege as much? Like I mentioned, it's well, in paragraph 67, they allege that he was notified and thereafter it talks about a meeting and sure enough, later on, it alleges that then they ratified the decision to terminate the investor operating agreement and that is paragraph 73. And that notice specifically references league rules? Well, in paragraph 67, it says that he was told that he was being they were seizing, I'm going to read as it says, May 17, 2022 Flores informed plaintiffs that the league was seizing the investor operator interest of Cangrejeros LLC in the franchise pursuant to section 3.06 of the constitution. And what is that? That's detrimental to baseball? No, that's the prohibition in the constitution of bringing suit, yes. Which is also in the operating agreement. And is bringing suit is it a prohibition against bringing suit within the business of baseball? In other words, suppose the agreement said, well, the reason we're terminating is because you made a broadcast deal with someone. There's at least some case law that says that would be irrelevant. That doesn't make it business of baseball. So, if that's the rule that was said to be broken, why is that a rule that's the business of baseball? Is that about putting on the game? The reason for the termination it's not whether the reason for termination is within the matter of baseball. It's whether the termination itself is within the matter of baseball. If you take that position, then that would mean you could seize the team from somebody because they made a broadcast deal. You could seize the team because they made concessioner deals. You could seize the team for all kinds of things that they do that other courts have held are outside the exception. Isn't that the logic of your position? I'm just saying those would not be subject to Sherman. Right. Yeah. Inconsistent with that other precedent that would be a more expansive view of the exception than those courts took of it. No. Your Honor, again, I believe that the trigger of what is the business of baseball is not the reasons behind for taking an action. It's whether the action itself being taken is part of the business of baseball. I understand that you say that, but the consequence of us taking that position would mean that we would be taking the opposite view of the court that decided the broadcast rights case. We would be taking the opposite view of the court that decided the Charlie Finley case. No, because in the broadcasting case, the decision related to the broadcasting. It was the matter under review. But the idea would basically be anything that's otherwise outside of it, so long as you seize the team for violating it, then it's the business of baseball again? Is that the position? I'm not saying that can be the position, but is the basic idea that they always have the right to seize the team and that's always the business of baseball? Your Honor, it's very different to have the right to seize a team as to just saying that it falls within the business of baseball exemption. There may be other problems. I'm not disagreeing with you. I'm just saying, your position is if the action alleged is the seizing of the team, that is automatically the business of baseball. Yes, for purposes of and no matter the reason for it. Are you saying it's the business of baseball here because it is specifically within the agreement and therefore if it's within the agreement, we don't look beyond that to see if it's within the business of baseball? It's part of league structure which has been held to be part of the business of baseball. You don't have a case that says the seizing of a team in and of itself is within the business of baseball. By the league. The decision of who operates the franchise or what franchises are going to survive and which ones are not, even downsizing, that's within the business of baseball exception. I'm just puzzled because you started your argument by saying let's look at what the relevant market is. The relevant market in those cases was ownership. I thought the suggestion was, okay, ownership that might be a different market. Not the business of baseball. But then they alleged this is not the ownership market. That brought it within the business of baseball. Now you're all the way back to saying ownership is the relevant market. Even if it is, so what? It's still the business of baseball. That's a much broader view. Which position are you trying to take? I'll clarify, Your Honor. I was talking about Piazza. And Piazza, the judge in that case took the position that ownership, only ownership was outside the business of baseball. What I'm trying to ask you is, can I decide this case in your favor other than by rejecting Piazza and saying that even if the market is ownership it's still the business of baseball. I understand if I took that position you might win. But I'm asking you if I didn't take that position, we didn't take that position, is there any way you could win? Yes. And I'll tell you why. It's because I'm not relying on the definition of the business of baseball including just ownership. I know Piazza, the judge of Piazza said it was out. But what's relevant about Piazza and the discussion of his discussion, his interpretation of what the business of baseball was, was based on the pleadings and the complaints. And he actually said, the judge of Piazza said if it turns out that in a factual development of the transfer and the ownership are inseparable then this may very well be subject to the business of baseball exception. And what I'm saying is he sought refuge for lack of a better term in his concept of ownership based on the complaint alleging only a market of ownership. And I'm saying that in this case that is not what's alleged. The market that's alleged in this case is broader. So we cannot use Piazza and tie ourselves to the concept of the market of ownership when the complaint in this case alleges that the market includes investment and operations. But what I'm asking is does investment and operations like ownership potentially fall outside of it? I understand the argument about players why that would fall within. But what about just the general defuse statement investment and operations? That could be anything. That could be advertising budget. That could be concessionaire statement. That could be broadcast. I'll concede that it can but as in Piazza where the judge referred to the allegations of the complaint in this case the allegations in the complaint are not just investment and a market of investment and operations. They intertwine everything. So the market's broader than the limited market that was alleged in Piazza. Let me ask isn't should Judge Young have allowed this case to proceed for discovery and decide this at a later junction? No, Your Honor. The business of baseball exemption for me applies very clearly. I want to go back to the first part. We're talking about the business of baseball. I want to go back to whether it applies to the league activity. First of all That's why I'm asking because there are you've been arguing certain matters that it's based on allegations or Judge Young's interpretation but with a clear record it's Yeah, we jumped ahead but I'm going to go back a little bit and talk about whether it should apply to La Liga. And it should. The notion that Major League Baseball that the business the business of baseball exemption that was set in the Federal Baseball Club of Baltimore case Let's assume for my question that it applies to the Puerto Rico League. Even if it applies they have an argument that this conduct is outside of the business of baseball. Well, I think that's what I was addressing before where they are alleging that unlike in Piazza they're alleging they define the market as investment operations and the access to players. That's how they define it. They're the master of their pleadings. Now as I mentioned before I do believe that the league's determination in terms of who is going to operate the franchise and where is part of league structure which except for Piazza. Piazza very respectful I think is an anomaly because only the Florida Supreme Court has followed it. All the other courts have criticized it. This is a matter of league structure and that falls within the business of baseball. Thank you. Thank you. Thank you counsel. Will attorney for appellants please come up and reintroduce yourself on the record. You have a three minute rebuttal. Jeffrey Kessler for appellants. Let me direct you to the paragraphs that are relevant to this debate. Paragraph 48 on information and belief defendants entered into their conspiracy to suppress economic competition from the franchise because they did not want to face enhanced economic competition in the relevant market for investing in and operating a top tier professional baseball team. That is virtually another way of saying the ownership market that was discussed in the second part there. It's for investing in, acquiring the thing and then operating it. That's what an owner does. We don't view that as being at all distinguishable with regard to that. Second, if you look at the allegations he mentioned in 67, it's true that they invoke their power to seize a franchise. But as your honor point, which they say is in the operator agreement, we could seize the franchise. That does not make it the business of baseball. To get there, you have to take the view that anything baseball does is the business of baseball. So yes, they invoke their power to seize. I think just slightly differently, they say that goes to league structure because it's the control over the team. So it's not anything that's done connected to baseball. You have a concessionaire's contract, that's different. But if you're actually seizing the team, you're defining who's running the league. That is the business of baseball. So this is the difference. If they pass the rule, we're only going to have 10 teams. That would be the business of baseball. The fact that they are seizing a team for other reasons doesn't make it the business of baseball. You say that's just like the Charlie Finley case. Yeah, it's just the Charlie Finley case. Imagine the following hypothetical. Let's say that the reason they were seizing the team is because someone went to the Department of Justice to complain that the Commissioner was bribing government officials and that as a result the Commissioner said, oh, I'm going to get together and seize this person's franchise. The fact that you use the seizing of the business of baseball, certainly not in a case where the Supreme Court has said, limit it to the facts. Don't expand it further. There's no way that when you read the current flood decision that they were thinking of covering conduct like that. That that would be the expanse. Let me ask you one question. Would further factual development below benefit you and of course also the opposing party and openly the district court? Again, I think there are two options here. One is just say as a matter of law that you reverse the dismissal motion, but you can indicate the defense as to what the business of baseball is and whether it's there could be invoked later at summary judgment after full discovery. That's the same rule. Whenever we reject a motion to dismiss, it's always open for summary judgment. Nothing special. You're not suggesting that we conditionally decide the motion to dismiss on further factual development. Absolutely not. I'm just saying you reverse. It could be raised again just like it always could be raised in a motion to dismiss. Thank you. Thank you. Thank you, counsel. That concludes arguments in this case.